Kirk D. Miller, WSBA #40025
*Kirk D. Miller, P.S.*
421 W. Riverside Ave., Ste 660
Spokane, WA 99201
(509) 413-1494 Telephone
(509) 413-1724 Facsimile

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| KRISTINE ORLOB-RADFORD, and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>MIDLAND FUNDING LLC, ENCORE CAPITAL GROUP, INC, and MACHOL & JOHANNES, PLLC,<br><br>Defendants. | Case No.: 2:15-CV-00307-JLQ<br><br>RESPONSE TO DEFENDANTS' MOTION TO COMPEL ARBITRATION |

## I. Background

Nearly since this case's inception, the Defendants have repeatedly asserted to this Court and Plaintiff's counsel that Plaintiff's claims are subject to an arbitration agreement. See e.g.: ECF No. 4 (Jan. 22, 2016), 7, 13. On April 25, 2015, the Defendants, collectively, moved this Court for an order removing Ms. Orlob-Radford's claim to arbitration and cutting off her right to participate in a class action. ECF No. 12. Defendants represented to counsel and the Court that

RESPONSE TO DEFENDANTS'
MOTION TO COMPEL
ARBITRATION - 1

they produced *the* binding agreement that is dispositive of the arbitration issue. ECF No. 13, 14. In support of the motion to compel arbitration, Midland's "Senior Manager, Operations" filed a declaration, to which he allegedly attached excerpts from the Loan Sale Agreement between FIA and Midland. ECF No. 14, Ex A. He also allegedly attached a copy of the agreement that Defendants claim obligates the Plaintiff to waive her right to class action relief and forces her to have her case removed to arbitration. *Id* at Ex C. On May 3, 2016, after developing a supported suspicion that the Defendants may have withheld critical information, Plaintiff filed a motion to extend the deadline to respond to Defendants' motion to compel arbitration, to allow time to conduct discovery on the issue of agreements that supersede the Defendants' right to compel arbitration. On June 13, 2016, the Court ordered Defendants to provide the Loan Sale Purchase Agreement to Plaintiff's counsel subject to a protective order. ECF No. 39. On July 15, 2016, Defendants served what purports to be a copy of the Loan Sale Agreement on Plaintiff's counsel.

## II. Argument and Authority

a. Legal Standard

"[W]hen the validity of an arbitration agreement is challenged, a court should apply ordinary state-law principles that govern the formation of

RESPONSE TO DEFENDANTS'
MOTION TO COMPEL
ARBITRATION - 2

contracts." *Luna v. Household Finance Corp. III*, 236 F. Supp.2d 1166, 1173 (W.D. Wash. 2002). "Generally, an assignee steps into the shoes of the assignor and acquires whatever rights the assignor had prior to the assignment". *AAA Cabinets & Millwork, Inc. v. Accredited Sur. & Cas. Co., Inc.*, 132 Wn. App. 202, 208, 130 P.3d 887, 890 (2006). However, the assignee does not acquire any right except those which the assignor had to transfer. *Morse Electro Products Corp. v. Beneficial Indus. Loan Co.*, 90 Wn.2d 195, 198, 579 P.2d 1341, 1342 (1978). "[T]he assignee takes the assignment subject to any defenses that could have been asserted against the assignor." *Fed. Fin. Co. v. Gerard*, 90 Wn. App. 169, 183, 949 P.2d 412, 417 (1998).

  b. FIA Voluntarily Relinquished Its Right to Compel Arbitration

  Even if Bank of America could have, at some time, invoked arbitration, that right was given up in the wake of the *Ross* settlement. ECF No. 15, 16, 19, and 20. The relevant portion of the *Ross* settlement agreement states:

> Bank of America will **remove any and all Arbitration Clauses and the Class Action Waiver Clauses** from its United States Cardholder Agreements…

ECF No. 20 pg. 16 (LSA ¶ 3(a))(emphasis added)

> …Bank of America will not seek to enforce an Arbitration Clause or Class Action Waiver Clause against a member of the

RESPONSE TO DEFENDANTS'
MOTION TO COMPEL
ARBITRATION - 3

> Settlement Class based on Currently existing or pre-existing United States Cardholder Agreements…

*Id.*

The "Settlement Class" is defined as:

> A class consisting of all persons holding during the Period in Suit a Credit Card under a United States Cardholder Agreement with any of the Bank Defendants

ECF No. 20 pg. 18.

"Period in Suit" is defined as:

> the period from the first Bank Defendant's adoption of an Arbitration Clause in its consumer Credit Card agreement through the date of execution of this Settlement Agreement.

ECF No. 20 Pg. 14

Under the definitions set forth above, Plaintiff is a member of the settlement class, and the Defendants admit as much. ECF No. 19, pg. 4. Regardless of how Bank of America was obligated to notify current and former customers that it was terminating its right to enforce arbitration, the fact is that Bank of America agreed that it would "remove" the arbitration agreements. The only limitation on removing the arbitration and class waiver clauses was that it only applied to accounts opened on or before February 3, 2010 (the date of the Ross settlement).

RESPONSE TO DEFENDANTS'
MOTION TO COMPEL
ARBITRATION - 4

As the alleged assignor of the Plaintiff's account to Midland, Bank of America could not have transferred any account covered by the *Ross* settlement without the protections and stipulations that are part of that agreement. *See: Gerard*, Supra.

Nothing in the *Ross* settlement, including paragraph 3(a), carves out a right for the bank or its assignees to enforce arbitration against some customers without a subsequent change to the cardholder agreements. Customers who were required to be sent monthly statements were directly notified of the change because the bank was already required to send monthly correspondence. There is no contemplation anywhere in the agreement that receiving notice in a monthly statement created a right different from those who did not receive monthly statements. Paragraph 3(a) sets forth the *method of notifying* the consumers of the agreement, not *whether* they are beneficiaries of the agreement. Paragraph 3(b) allows for cardmember agreements to be modified and new arbitration and class action waivers added back to the agreements three and a half (3.5) years after May 1, 2010. *Id.* There is no argument that Plaintiff's cardmember agreement was ever modified after 2013 to re-introduce an arbitration clause, and it is unlikely that any such modification would be enforceable in any event.

Defendants' argument that the Plaintiff is a member of a special carve-out class that gets fewer benefits under the settlement, is wholly without merit.

According to their theory, contrary to the plain language of paragraph 3(a), the arbitration clauses were not "removed" from the agreements for this fictional carve-out subclass. Rather, Defendants advance the theory that for those individuals who did not receive monthly statements, the arbitration clauses in their agreements simply turned into zombies. ECF No. 19, pg. 5-6. They claim that the right to compel arbitration was not actually "removed", but was instead only buried under the *Ross* settlement for a five (5) year period. *Id*. At the end of the five (5) years, the arbitration and class action waiver clauses for those unlucky customers would dig themselves out from under the *Ross* settlement without any further action by the bank or its assignees. *Id.* The Defendants' theory is not contemplated anywhere in the agreement. It is made up from whole cloth and is contrary to both the purpose and plain language of the agreement.

      c. Midland Agreed It Would Not Compel Arbitration as a Condition of Assignment

Unequivocally stated, and exactly as the Plaintiff predicted, the Midland Defendants and their agents gave up their right to compel arbitration when they entered into the agreement to purchase the Plaintiff's account and at least an admitted thirty-two thousand eight hundred two (32,802) other accounts. ECF No. at ¶ 4.4. Similar to the agreements between FIA and other debt buyers that the Plaintiff produced at ECF No. 16, Paragraph 4.4 of the Loan Sale Agreement

RESPONSE TO DEFENDANTS'
MOTION TO COMPEL
ARBITRATION - 6

forbids the Defendants from enforcing any arbitration agreement against the Plaintiff or any of the other account. Paragraph 4.4 of the Loan Sale Agreement states:

> Section 4.4 <u>Disputes With Obligors Resolved Through Arbitration Or Litigation.</u> Buyer acknowledges and agrees that any claim, dispute or action against an Obligor of a Loan shall be resolved by arbitration or litigation pursuant to the terms and conditions of the underlying loan agreement between Seller and such Obligor, which is assigned to and assumed by buyer, pursuant to the terms of this Agreement. **If an arbitration option or class waiver was provided in the original terms and conditions, enforcement of such arbitration or class waiver clause is not permitted**. However, there are exceptions to this prohibition which are outlined below:
>
> a. A consumer arbitration award obtained prior to December 11, 2009 can be enforced:
> b. For any consumer credit card arbitration already pending as of December 11, 2009, the Buyer can arbitrate if it (i) offers such customer in writing the choice between containing an arbitration or having the matter refiled in court; and (ii) the customer ops in writing for the existing arbitration to continue; or
>
> c. if a consumer agreement requires arbitration, it can proceed provided the customer maintains that the dispute cannot proceed in court because the dispute is required to be arbitrated.

*Id* (emphasis added)

RESPONSE TO DEFENDANTS'
MOTION TO COMPEL
ARBITRATION - 7

None of the "exceptions" apply to this Plaintiff or this case. The prohibition on enforcing arbitration is in no way related to any limitation or sunset clause in the *Ross* settlement.

It should be noted that the parties to the FIA cardmember agreement[1] never agreed that all disputes would be heard in arbitration. ECF No. 14. Defendants inaccurately claim that "Plaintiff agreed to arbitrate all disputes with Defendant on an individual, rather than class basis." ECF No. 12 pg. 11. Not so. Rather, the agreement states that the parties may choose to arbitrate rather than have the case heard in court "upon election by either you or us". *Id*. In fact, Defendants chose to sue the Plaintiff in a court, rather than arbitrate the dispute when they were seeking damages from her. To be clear, Plaintiff did not and does not elect to arbitrate this

---

[1] Plaintiff does not concede that the "agreement" produced by the Defendants governs here. It is unauthenticated hearsay, not signed by the Plaintiff, and completely lacking in any indication, much less admissible evidence, that it is related to any agreement between the Plaintiff and her former creditor. Plaintiff is moving to strike these portions of ECF No. 14 in their entirety. Plaintiff addresses and accepts the contention that ECF No. 14 contains a copy of an agreement between FIA and the Plaintiff only for purposes of argument and nothing more.

RESPONSE TO DEFENDANTS'
MOTION TO COMPEL
ARBITRATION - 8

claim.  The Defendants are prohibited by the terms of their own agreement with the creditor, as well as the creditor's agreement in the *Ross* settlement, from electing arbitration against the wishes of the Plaintiff.

Prior to producing the Loan Sale Agreement, Defendants argued to this Court that it was unnecessary for them to produce the agreement because the *Ross* settlement allowed them to enforce arbitration.  ECF No. 19 pg. 6.  In the course of fashioning their argument in favor of their right to compel arbitration, the Midland defendants intentionally withheld their own agreement with Bank of America, thereby concealing the dispositive contract language governing their right to compel arbitration.  The withholding and complete failure to mention *the existence* of their agreement with the bank is telling.  If it had supported their argument, they would have used it to their advantage and flaunted its contents.  Instead, they chose to hide it until forced by this Court to turn it over, and only after conceding that Plaintiff's counsel correctly speculated that it might exist.  To the extent that the Court finds any ambiguity in the *Ross* settlement, the FIA/Midland agreement unquestionably forbids them from enforcing arbitration.

Had the Court not granted Plaintiff's motion for additional time to conduct discovery, the Defendants may very well have succeeded in deceiving the Court

RESPONSE TO DEFENDANTS'
MOTION TO COMPEL
ARBITRATION - 9

and Plaintiff, and depriving Plaintiff of her right to litigate this case in a court of law. Such devious tactics should not be tolerated.

    d. The Court Should Not Entertain Any Argument from Defendants on Interpretation of the Loan Sale Agreement

Defendants made the calculated decision to withhold a critical document that directly refutes their assertion that the Plaintiff's claim is subject to arbitration. No reference to the Loan Sale Agreement, much less argument regarding its contents were made in the Defendants' motion to compel arbitration. Once Plaintiff demanded the document and sought leave to acquire it, Defendants should have confessed that they had been caught and addressed the issue head-on. Instead, the Midland defendants responded much like the Wizard of Oz[2], attempting to convince the Court that it should pay no attention to the pesky truth of the Loan Sale Agreement and rely solely on the self-serving, half-truth content of "the great and powerful" cardmember agreement, which favored their position on arbitration. The Defendants even went so far as to devote legal argument to analysis and interpretation of language in the *sample* contracts produced by the Plaintiff at ECF No. 16, while knowing the entire time exactly what the *actual* contract language states.

---

[2] "Pay no attention to that [Loan Sale Agreement] behind the curtain". *The Wizard of Oz*, Metro-Goldwyn-Mayer (1939).

RESPONSE TO DEFENDANTS'
MOTION TO COMPEL
ARBITRATION - 10

"It is clear that in the Ninth Circuit new issues and evidence may not be raised in reply briefs. *Atigeo LLC v. Offshore Ltd., D*, C13-1694JLR, 2014 WL 239096, at *8 (W.D. Wash. Jan. 22, 2014) (citing: *Bazuaye v. I.N.S.,* 79 F.3d 118, 120 (9th Cir.1996) ("Issues raised for the first time in the reply brief are waived."). "When new material is raised, courts have discretion to strike that material." Id (citing: *Tovar v. U.S. Postal Serv.,* 3 F.3d 1271, 1273 (9th Ci r.1993) (striking portions of a reply brief that presented new information); *Nautilus Grp., Inc. v. Icon Health & Fitness, Inc.,* 308 F.Supp.2d 1208, 1214 (W.D.Wash.2003) (striking a declaration with new evidence submitted in reply)).

The Defendants have had multiple opportunities to argue about the language in the Loan Sale Agreement but instead chose to focus their entire effort on trying to make sure that the Plaintiff and the Court would never see it. Once it became clear that they would have to produce it, Defendants then turned their attention to ensuring that the public would never see it. At this time, Plaintiff has no idea how the Defendants might craft a creative legal analysis in order to preserve their claimed right to enforce arbitration in light of the contents of the Loan Sale Agreement. Plaintiff should not be forced, in her response brief, to engage in speculation about the possible arguments that Defendants might invent. If Plaintiff is not provided an opportunity to respond to the Defendants *new* arguments, she

would be substantially prejudiced. New arguments supporting the Defendants' right to compel arbitration should, therefore, not be allowed.

### III. Conclusion

There is no justifiable reason why the Defendants continue to pursue arbitration when they know full well that their right to enforce it was given up via their own bargained-for contract. It is now clear, however, why they were so adamant about keeping the LSA out of public view through a protective order and why they argued that the Plaintiff should not have a right to examine the agreement prior to filing her response to their motion to compel arbitration. See ECF No. 19. As set forth in Plaintiff's Motion for Extension of Time (ECF No. 15), the Midland defendants have successfully withheld similar documents and presumably deceived at least one other court into believing that the cardmember agreement is the only relevant document that relates to their right to compel arbitration. They almost got away with it in this case, as well.

A "well-established tenet of tort law proclaims that one who voluntarily elects to make a partial disclosure is deemed to have assumed a duty to tell the whole truth, i.e., to make full disclosure, even though the speaker was under no duty to make the partial disclosure in the first place." *Union Pac. Res. Grp., Inc. v. Rhone-Poulenc, Inc.*, 247 F.3d 574, 584 (5th Cir. 2001)(citing: Restatement

(Second) of Torts § 551(2)(b) (1976)). The same principal should be applied here. The Defendants could have simply made no representations about their right to compel arbitration and avoid any potential class action. However, once they asserted that they had a contractual right to force the Plaintiff into arbitration, the Defendants should have disclosed all relevant contracts, even if they were potentially harmful to their desired outcome or result. The Midland defendants' actions in this case are precisely the reason that courts generally require witnesses to tell "the whole truth".

Aside from the Defendants' strained and self-serving analysis of the *Ross* agreement, there is no doubt that this Plaintiff cannot be compelled to arbitrate her claims. The Midland defendants' material misrepresentations to the Court, withholding crucial documents, and their utter waste of the Court's and counsel's time in litigating this issue should be met with a strong admonishment from the Court, if not sanctions. Their intentional withholding of relevant authority and their deception toward the Court and counsel demonstrates that the Midland defendants simply cannot be trusted to be forthright with the Court.

For all of the reasons stated herein, the Plaintiff respectfully requests that the Court DENY the Defendant's motion to compel arbitration.

///

RESPONSE TO DEFENDANTS'
MOTION TO COMPEL
ARBITRATION - 13

DATED this 27th day of July, 2016.

                                            *Kirk D. Miller P.S.*

                                        /s Kirk D. Miller
                                        Kirk D. Miller, WSBA #40025
                                        Attorney for Plaintiffs

## CM/ECF CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of October, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following:

Brad Fisher                bradfisher@dwt.com

John D. Munding      munding@crumb-munding.com

                                          *Kirk D. Miller P.S.*

                                        /s Kirk D. Miller
                                        Kirk D. Miller, WSBA #40025
                                        Attorney for Plaintiffs