JOHN D. MUNDING
MUNDING, P.S.
1610 W. Riverside Ave.
Spokane, WA 99201
john@mundinglaw.com
(509) 624-6464

UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| KRISTINE ORLOB-RADFORD, and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MIDLAND FUNDING, LLC; ENCORE CAPITAL GROUP, INC.; and MACHOL & JHANNES, PLLC,<br><br>Defendants. | Case No. 2:15-cv-00307-JLQ<br><br>**DEFENDANT MIDLAND FUNDING, INC's AND ENCORE CAPITAL GROUP, INC'S RE-FILING OF REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO COMPEL ARBITRATION (SEALED ECF No. 48)** |

THE DEFENDANT MIDLAND FUNDING, LLC, and DEFENDANT ENCORE CAPITAL GROUP, INC. ("Defendants"), through counsel John D. Munding, of Munding, P.S., hereby re-file their *Reply To Plaintiff's Response to Defendants' Motion To Compel Arbitration* previously filed under seal and referenced

by ECF No. 48. This refiling is made pursuant to this Court's *Order Re: Redations* (ECF No. 60).

DATED this 16th day of November, 2016.

            MUNDING, P.S.

            */s/ John D. Munding*
            JOHN D. MUNDING
            Attorney for Defendants Midland
            Funding, LLC and
            Encore Capital Group, Inc.

JOHN D. MUNDING
MUNDING, P.S.
1610 W. Riverside Ave.
Spokane, WA 99201
john@mundinglaw.com
(509) 624-6464

UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| KRISTINE ORLOB-RADFORD, and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MIDLAND FUNDING, LLC; ENCORE CAPITAL GROUP, INC.; and MACHOL & JOHANNES, PLLC,<br><br>Defendants. | Case No. 2:15-cv-00307<br><br>**DEFENDANTS MIDLAND FUNDING, INC.'S AND ENCORE CAPITAL GROUP, INC.'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO COMPEL ARBITRATION** |

THE DEFENDANTS MIDLAND FUNDING, LLC, and ENCORE CAPITAL GROUP, INC. ("Defendants"), through counsel John D. Munding, of Munding, P.S., hereby submits the following reply to *Plaintiff's Response to Defendants' Motion to Compel Arbitration, (filed under seal).*

DEFENDANT MIDLAND FUNDING, INC.'S
REPLY TO PLAINTIFF'S RESPONSE TO MOTION
TO COMPEL ARBITRATION
- 1

MUNDING, P.S.
1610 W. RIVERSIDE AVE.
SPOKANE, WA 99201
(509) 624-6464

## INTRODUCTION

In response to Defendants' motion to compel arbitration, Plaintiff cites no law and presents no evidence nor any testimony to rebut the existence of her binding arbitration agreement. Instead, Plaintiff makes bald assertions and relies upon the "*Wizard of Oz*" to argue that the *Ross* class settlement (the "*Ross* Settlement"), along with cherry-picked language from the Purchase Agreement between Midland Funding and FIA/Bank of America, precludes Defendants from enforcing the arbitration clause that governs Plaintiff's account.[1] However, these same arguments have recently been rejected by other courts. *See Danley v. Encore Capital Grp., Inc.*, Case No. 15-CV-11535, 2016 U.S. Dist. LEXIS 64242 (E.D. Mich. May 16, 2016)(Appendix A). Plaintiff's opposition to arbitration should be rejected for several reasons:

*First*, Plaintiff incorrectly (and half-heartedly) contends that Defendants have not presented sufficient evidence of her arbitration agreement. To the contrary, Defendants have produced Plaintiff's agreement through sworn testimony, which is admissible under the business record exception to the rule against hearsay, and which remains unrebutted. *Second*, Plaintiffs incorrectly contend that Defendants do not have the right

---

[1] As noted previously, *Ross, et al. v. Bank of America, N.A. (USA), et al.*, S.D.N.Y. Case No. 05-CV-7116, was an antitrust case brought under the Sherman Act against numerous banks alleging collusive practices in the adoption of arbitration clauses in agreements. While some of the bank defendants in *Ross* opted to settle the action, the remaining banks litigated the action on the merits and ultimately prevailed at trial.

DEFENDANT MIDLAND FUNDING, INC.'S
REPLY TO PLAINTIFF'S RESPONSE TO MOTION
TO COMPEL ARBITRATION
-2

MUNDING, P.S.
1610 W. RIVERSIDE AVE.
SPOKANE, WA 99201
(509) 624-6464

to invoke Plaintiff's arbitration agreement because Midland Funding was allegedly not assigned the right to arbitrate Plaintiff's claims arising from her FIA/Bank of America credit card account. This argument is without merit. Pursuant to the FAA, Supreme Court, Ninth Circuit, and recent authority from other courts dealing with the same argument, this is an issue delegated to the arbitrator to resolve. *Third*, Plaintiff's counsel wrongly accuses Defendants of misleading this Court by failing to identify certain language in the Purchase Agreement that Plaintiff argues shows that FIA/Bank of America did not assign the right to arbitrate Plaintiff's claims to Defendants. Plaintiff, however, blatantly omits to mention other portions of the same agreement, which when read in unison, unambiguously shows otherwise.

## ARGUMENT

**I.   Defendants Have More Than Satisfied Their Burden Of Proof Regarding Plaintiff's Arbitration Agreement.**

Citing no authority, Plaintiff incorrectly intimates that Defendants have not met their evidentiary burden because they have not produced a credit card agreement signed by the Plaintiff. (Response, p. 8 n. 1). This argument is unsupported by any facts or law; it also rings hollow. Moreover, this same argument was recently rejected by another court, which dealt with similar opposition by a putative class action plaintiff to arbitration. *See Danley v. Encore Capital Grp., Inc.,* Case No. 15-CV-11535, 2016 U.S. Dist. LEXIS 64242 (E.D. Mich. May 16, 2016)(Appx. A)(granting motion to compel

DEFENDANT MIDLAND FUNDING, INC.'S
REPLY TO PLAINTIFF'S RESPONSE TO MOTION
TO COMPEL ARBITRATION
-3

MUNDING, P.S.
1610 W. RIVERSIDE AVE.
SPOKANE, WA 99201
(509) 624-6464

arbitration and explaining that federal courts routinely accept exemplar documents as evidence of agreements to arbitrate); *see also, Coppock v. Citigroup, Inc.*, No. 11-1984, 2013 U.S. Dist. LEXIS 40632. *12-13 (W.D. Wash. March 22, 2013) (accepting an "exemplar" agreement where the plaintiff "produced no evidence that the 2001 agreement is not the agreement that governed her account.") Here, Plaintiff has presented no sworn testimony nor any other documentary evidence to rebut the agreement that has been produced.

## II. As A Matter Of Law, Defendants May Invoke Plaintiff's Arbitration Agreement And The Enforceability of the Arbitration Agreement Is A Matter For the Arbitrator to Decide Pursuant to The FAA.

It is axiomatic that the FAA "create[s] a body of federal substantive law of arbitration, applicable to any arbitration agreement within the coverage of the Act," and applicable "notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); Under the Supremacy Clause of the Constitution of the United States the FAA outweighs state law regarding arbitration as "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof ... shall be the supreme Law of the Land." U.S. Const. art. VI, cl. 2. As recently confirmed again by the U.S. Supreme Court, when an arbitration agreement exists, the FAA constrains state law as it prescribes two federal-law principles to parties' to resolve their disputes efficiently and

DEFENDANT MIDLAND FUNDING, INC.'S
REPLY TO PLAINTIFF'S RESPONSE TO MOTION
TO COMPEL ARBITRATION
-4

MUNDING, P.S.
1610 W. RIVERSIDE AVE.
SPOKANE, WA 99201
(509) 624-6464

fairly through arbitration: "First, state law must not discriminate against arbitration or be applied in a manner that disfavors arbitration agreements. Second, any ambiguity in the terms of an arbitration agreement must be resolved in favor of arbitration." *DIRECTV, Inc. v. Imburgia*, 2015 WL 3505225 (U.S.), 11 (U.S., 2015).

Here, Plaintiff's dispute as to whether Bank of America's *Ross* Settlement or the Purchase Agreement between FIA/Bank of America and Midland somehow preclude Midland from enforcing the arbitration agreement is an issue for the arbitrator to decide under the delegation provision in the Plaintiff's arbitration agreement, which states clearly and unmistakably that **"Any dispute, claim, or controversy ("Claim") ...arising out of or relating to...the validity or scope of any provision of this Agreement including this arbitration clause shall...be resolved by binding arbitration."** (ECF 14, Ex. C, para. 7.19) Provisions such as this are clearly valid and enforceable under the FAA §2. *See e.g. Rent-A-Center v. Jackson*, 561 U.S. 63 (2010).

The Ninth Circuit recently explained in *Brennan v. Opus Bank*, 796 F.3d 1125 (9th Cir. 2015), that "[g]enerally, in deciding whether to compel arbitration, a court must determine two 'gateway' issues: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan*, 796 F.3d at 1130 "However, these gateway issues can be expressly delegated to the arbitrator where 'the parties clearly and unmistakably provide otherwise.'" *Id.* Where a delegation

DEFENDANT MIDLAND FUNDING, INC.'S
REPLY TO PLAINTIFF'S RESPONSE TO MOTION
TO COMPEL ARBITRATION
-5

MUNDING, P.S.
1610 W. RIVERSIDE AVE.
SPOKANE, WA 99201
(509) 624-6464

provision is nested within the arbitration agreement at issue, as is the case here, any question concerning the enforceability of the arbitration agreement within which the delegation provision is nested, is a matter for the arbitrator to decide. *See Brennan*, 796 F.3d at 1133.

As to the first gateway issue, there is no dispute, as there is an agreement to arbitrate between Plaintiff and creditor Bank of America. As to the second gateway issue, Plaintiff argues that arbitration agreement is somehow replaced by the *Ross Settlement*. Regardless, the issue of whether or not the *Ross Settlement* or Loan Purchase Agreement preclude Midland from enforcing the arbitration agreement is clearly a matter and issue delegated to the arbitrator.

**A.    Plaintiff's Contention That The *Ross* Settlement Eliminated Her Arbitration Agreement Is Incorrect.**

Under the *Ross* Settlement, (*See Munding Declaration, Ex. A, ECF No. 20*), the Settlement Class consists of "all persons holding during the Period in Suit a Credit Card under a United States Cardholder Agreement with any of the Bank Defendants . . ." (*Ross* Settlement, Sec. 2(dd); 4(a)). Plaintiff misconstrues Bank of America's obligations under the *Ross* Settlement regarding her account. Bank of America's obligations under the *Ross* Settlement are located at Sections 3(a) through (c). Plaintiff's argument hinges on the application of Sections 3(a) and (b) to her account. Those

DEFENDANT MIDLAND FUNDING, INC.'S
REPLY TO PLAINTIFF'S RESPONSE TO MOTION
TO COMPEL ARBITRATION
-6

MUNDING, P.S.
1610 W. RIVERSIDE AVE.
SPOKANE, WA 99201
(509) 624-6464

sections, however, do not apply to her account. Under the plain language of the *Ross* Settlement, only Section 3(c) applies to Plaintiff's account.

For example, the obligations under Section 3(a) apply only to "Credit Card cardholders who will receive a 2010 annual privacy notice pursuant to 12 C.F.R. 40.5" and "all cardholders of newly-opened . . . accounts . . ." (*Ross* Settlement, Sec. (3)(a)). Section 3(b) applies to the obligations in Section 3(a) and requires the bank not to restore or otherwise insert arbitration clauses back into the agreements for 3.5 years. Section (3)(b) clearly relates to the obligations in Section (3)(a) because it explicitly references the "May 1, 2010 Mailings" required under Section (3)(a).

These Sections do not apply to Plaintiff's account because Bank of America charged-off Plaintiff's account on **November 29, 2006**. As Plaintiff concedes in her Response, as she must, after an account is charged-off, Bank of America no longer sends monthly statements. When the *Ross* Settlement was signed in 2010, after an account had been charged-off and monthly statements were discontinued, annual privacy notices under 12 C.F.R. 40.5[2] were no longer sent. *See* 12 C.F.R. 40.5(b). Thus, Sections 3(a) and 3(b) do not apply to Plaintiff's account because it was not a "newly-opened account" in 2010 when the *Ross* Settlement was signed, and Plaintiff was not sent "a

---

[2] 12 C.F.R. 40.5 was removed in 2014.

DEFENDANT MIDLAND FUNDING, INC.'S
REPLY TO PLAINTIFF'S RESPONSE TO MOTION
TO COMPEL ARBITRATION
-7

MUNDING, P.S.
1610 W. RIVERSIDE AVE.
SPOKANE, WA 99201
(509) 624-6464

2010 annual privacy notice pursuant to 12 C.F.R. 40.5." (*See Ross* Settlement, Sec. (3)(a)). Plaintiff's interpretation of the *Ross* Settlement is simply wrong.

Rather, **only Section 3(c) of the Ross Settlement applies to Plaintiff**, which applies more broadly to all members of the Settlement Class. Under Section 3(c) of the *Ross* Settlement, Bank of America agreed that it "will not seek to enforce an Arbitration Clause or Class Action Waiver Clause against a member of the Settlement Class based on currently existing or pre-existing United States Cardholder Agreements." (*Ross* Settlement, Sec. (3)(c)). However, under the plain language of Section 14 of the *Ross* Settlement—**which Plaintiff did not mention in her Response**—Bank of America's obligations under Section 3(c) expressly expired on February 23, 2015—"five (5) years after the date of execution of this Settlement Agreement." (*Ross* Settlement, Sec. 14). Contrary to what Plaintiff argues in her motion, Bank of America was not required to eliminate or remove her arbitration agreement under Sections 3(a) and (b). Rather, under the plain terms of the *Ross* Settlement, Bank of America only agreed under Section 3(c) that it would not seek to enforce Plaintiff's arbitration agreement for a five-year period, which expired on February 23, 2015.

Moreover, Section 13 of the *Ross* Settlement—**which Plaintiff also did not disclose in her Response**—states:

> With respect to any Bank of America Consumer/Small Business Credit Card cardholder agreement, account or

DEFENDANT MIDLAND FUNDING, INC.'S
REPLY TO PLAINTIFF'S RESPONSE TO MOTION
TO COMPEL ARBITRATION
-8

MUNDING, P.S.
1610 W. RIVERSIDE AVE.
SPOKANE, WA 99201
(509) 624-6464

> obligation that Bank of America transfers or assigns to a third party after February 1, 2010, **Bank of America will contract with said third party for said third party to abide by the provisions of <u>Paragraph 3(c)</u> above.**

(*Ross* Settlement, Sec. 13). As discussed above, however, the provisions of Paragraph 3(c) expressly expired on February 23, 2015. The *Ross* Settlement does not preclude Defendants from seeking to enforce Plaintiff's arbitration agreement because this action was filed well after the provisions of Paragraph 3(c) expired.

### B. Plaintiff's Reliance On Language Within Section 4.4 Of The Bank of America Purchase Agreement Regarding Arbitration Is Also Misplaced.

Plaintiff relies upon Section 4.4 of the Purchase Agreement. In her Response, Plaintiff focuses entirely on the last sentence that states: "**[i]f an arbitration option or class waiver was provided in the original terms and conditions, the enforcement of such arbitration or class waiver clause is not permitted.**" (Response p. 7). Plaintiff completely ignores the first part of Section 4.4, which mandates the compelling of arbitration, and fails to recognize the significance of the word "**<u>original</u> terms and conditions**" in the sentence upon which she does rely. A reading of the Purchase Agreement sections--**<u>prior to Section 4.4</u>**--namely Section 2.1, makes clear that Midland Funding did obtain the right to compel the arbitration of Plaintiff's Bank of America account at issue. Section 2.1 contains a clause that makes clear that Midland

DEFENDANT MIDLAND FUNDING, INC.'S
REPLY TO PLAINTIFF'S RESPONSE TO MOTION
TO COMPEL ARBITRATION
-9

MUNDING, P.S.
1610 W. RIVERSIDE AVE.
SPOKANE, WA 99201
(509) 624-6464

does not own the right to the **<u>ORIGINAL ACCOUNT NUMBER</u>** and the account related to that number:

> Section 2.1. <u>Agreement to Sell and Purchase Loans.</u> Seller agrees to sell, and Buyer agrees to purchase on the Transfer Date the Loans described on the Loan Schedule, at the Purchase Price and subject to the terms, provisions, conditions, limitations, waivers and disclaimers set forth in this Agreement. The Seller's right, title and interest to the Loans purchased by the Buyer shall be transferred and assigned by delivery of the Transfer Documents to the Buyer. BUYER EXPRESSLY ACKNOWLEDGES AND AGREES THAT THE ORIGINAL ACCOUNT NUMBER WHICH IDENTIFIED ANY LOAN (PRIOR TO ITS CHARGE OFF BY THE SELLER AND THE ASSIGNMENT OF A NEW ACCOUNT NUMBER) AND THE ACCOUNT RELATING TO THE ORIGINAL ACCOUNT NUMBER, ARE NOT BEING PURCHASED UNDER THIS AGREEMENT AND THAT BUYER WILL NOT ASSERT ANY OWNERSHIP OR OTHER INTEREST OVER THE ORIGINAL ACCOUNT NUMBER OR THE ACCOUNT RELATING THERETO. SELLER AGREES TO PROVIDE THE ORIGINAL ACCOUNT NUMBER TO BUYER SOLELY FOR THE PURPOSE OF ALLOWING BUYER TO USE THE ORIGINAL ACCOUNT NUMBER IN ITS COLLECTION ACTIVITIES RELATED TO THE LOANS.

A review of the account information provided by Bank of America when Midland Funding purchased Plaintiff's account shows an "Original Account Number" (****4251)," a "Conversion Account Number (****7159)," and a "Charge Off Account Number (****8265)." (ECF 14, Burger Decl., Ex. B). The November 2006 Bank of America billing statement for Plaintiff's account shows the "***7159" account number. (ECF 14, Burger Decl., Ex. C), which also applies to the Bank of

DEFENDANT MIDLAND FUNDING, INC.'S
REPLY TO PLAINTIFF'S RESPONSE TO MOTION
TO COMPEL ARBITRATION
- 10

MUNDING, P.S.
1610 W. RIVERSIDE AVE.
SPOKANE, WA 99201
(509) 624-6464

America terms and conditions applicable to Plaintiff's account. (Id., Ex. D). These are not the "original terms and conditions" referenced in Section 4.4, as Midland never was assigned the right to nor any ownership interest in Plaintiff's "original account," and thus, a reading of the plain language of the Purchase Agreement explains why Midland could never compel arbitration on that account. As noted before, identical arguments by plaintiffs seeking to avoid the arbitration of their claims have been recently rejected. See *Danley, Supra.* (granting motion to compel arbitration, rejecting challenge that the arbitration agreements at issue were unenforceable under the *Ross* Settlement and the terms of the purchase agreements between Midland Funding and banks, and also holding that the enforceability of the arbitration agreements had been delegated to the arbitrator to resolve pursuant to the FAA.)

## **CONCLUSION**

For all of the above-reasons, as well as those stated in previous filings with this Court, Defendants' Motion to Compel Arbitration should be granted and the case stayed pending the arbitration of Plaintiff's claims on an individual basis.

DATED this 3rd day of August, 2016.

MUNDING, P.S.

*/s/ John D. Munding*
JOHN D. MUNDING
Attorney for Defendant Midland

DEFENDANT MIDLAND FUNDING, INC.'S
REPLY TO PLAINTIFF'S RESPONSE TO MOTION
TO COMPEL ARBITRATION
- 11

MUNDING, P.S.
1610 W. RIVERSIDE AVE.
SPOKANE, WA 99201
(509) 624-6464

# APPENDIX A

Neutral
As of: August 3, 2016 10:05 AM EDT

# Danley v. Encore Capital Grp., Inc.

United States District Court for the Eastern District of Michigan, Southern Division

May 16, 2016, Decided; May 16, 2016, Filed

Case No. 15-CV-11535

**Reporter**
2016 U.S. Dist. LEXIS 64242

JACOB J. **DANLEY** and JEFFREY J. MACINTYRE, JR., Plaintiffs, vs. ENCORE CAPITAL GROUP, INC., **MIDLAND** FUNDING, LLC, and **MIDLAND** CREDIT MANAGEMENT, INC., Defendants.

**Prior History:** Danley v. Encore Capital Grp., Inc., 2015 U.S. Dist. LEXIS 160651 ( E.D. Mich., Dec. 1, 2015)

## Core Terms

arbitration, Declaration, credit card, Card, arbitration provision, credit card account, arbitration agreement, authentication, defendants', exemplar, class action, delegation, provides, motion to compel arbitration, subject to arbitration, original creditor, enforceability, plaintiffs', Collection, opened

**Counsel:** [*1] For Jacob N **Danley**, Plaintiff: David Scott Parnell, The Parnell Firm, PLLC, Saint Clair Shores, MI; Lynn H. Shecter, William A. Roy, Michelle E. Vocht, Roy, Shecter, and Vocht, P.C., Birmingham, MI; Sean R. O'Mara, O'Mara Law Firm PC, St. Clair Shores, MI.

For Jeffrey J McIntyre, Plaintiff: Michelle E. Vocht Roy, Shecter & Vocht, P.C., Birmingham, MI.

For Encore Capital Group, Inc, **Midland** Credit Management, Inc., **Midland** Funding LLC, Defendants: Aaron L. Vorce, Theodore W. Seitz, Dykema Gossett, Lansing, MI.

**Judges:** HON. GEORGE CARAM STEEH, UNITED STATES DISTRICT JUDGE.

**Opinion by:** GEORGE CARAM STEEH

## Opinion

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION AND DISMISS ACTION WITHOUT PREJUDICE [DOC. 39]**

Plaintiffs filed this case under the Fair Debt Collection Act and Michigan Collection Practices Act. Defendants purchase credit card debts from banks and other debt buyers after the bank has charged off the debts. Plaintiffs maintain that defendants did not purchase the right to add or reassess or collect interest once it had been waived and extinguished by the bank. Nonetheless, defendants made efforts to collect the post charge-off interest from the debtors whose accounts they purchased. For those [*2] debtors who did not pay in response to the telephonic and mail collection actions, defendants filed lawsuits against the debtors.

In this lawsuit, plaintiffs allege defendants violated various sections of the federal and Michigan collection statutes by adding and attempting to collect interest that has been waived by the original owner of the debt. The matter is presently before the court on defendants' renewed motion to compel arbitration and dismiss the action without prejudice.

1. Plaintiff **Danley's** Citibank Credit Card Account

Plaintiff Jacob J. **Danley** opened a credit card account issued by Citibank on April 6, 2009, with an account number ending in 5718. Following the court's December 1, 2015 order denying defendants' original motion to compel arbitration, Citibank submitted a supplemental response to the **Midland** defendants' August 6, 2015 subpoena which includes a Declaration authenticating the Card Agreement that governs **Danley's** Citibank account. Attached to the Declaration of Catherine Reinecke, Vice President of Citibank, is an exemplar of the Card Agreement for the account that was sent to **Danley** when he opened the account in April 2009. The May 2009 statement transaction detail [*3] for the **Danley** account is also attached, and shows that **Danley** used the account after receiving the Card

Agreement, which included an arbitration agreement.

The Card Agreement provides, "This Agreement is binding on you unless you close your account within 30 days after receiving the card and you have not used or authorized use of the card." *Danley* used his Citibank Account by making purchases, and stopped making payments on the account on July 23, 2009. The account was charged off on March 16, 2010.

The exemplar credit card agreement contains an arbitration provision:

> Either you or we may, without the other's consent, elect mandatory, binding arbitration for any claim, dispute, or controversy between you and us (called "Claims").
>
> All Claims relating to your account, a prior related account, or our relationship are subject to arbitration, including Claims regarding the application, enforceability, or interpretation of this Agreement and this arbitration provision. All Claims are subject to arbitration, no matter what legal theory they are based on or what remedy (damages, or injunctive or declaratory relief) they seek. . . .
>
> . . .
>
> Not only ours and yours, but also Claims made by or against [*4] anyone connected with us or you or claiming through us or you, such as a co-applicant or authorized user of your account, an employee, agent, representative, affiliated company, predecessor or successor, heir, assignee, or trustee in bankruptcy.
>
> Any questions about whether Claims are subject to arbitration shall be resolved by interpreting this arbitration provision in the broadest way the law will allow it to be enforced.

The arbitration provision also contains a class action waiver provision: "Claims and remedies sought as part of a class action . . . are also subject to arbitration on an individual (non-class, non-representative) basis, and the arbitrator may award relief only on an individual (non-class, non-representative) basis."

The arbitration agreement provides that it is "governed by the *Federal Arbitration Act* (the "FAA")." (Ex. C, p. 214). The Credit Card Agreement provides that Citibank may assign the Agreement: "We may assign any or all of our rights and obligations under this Agreement to a third party." (Ex. C, p. 217). The arbitration provision states that it "shall survive: (I) termination or changes in the Agreement, the account, or the relationship between you and [*5] us concerning the account; (ii) the bankruptcy of any party; and (iii) any transfer, sale or assignment of your account, or any amounts owed on your account, to any other person or entity." (Ex. C, p. 217).

On March 29, 2013, Citibank sold and assigned *Danley*'s Citibank Account to Thunderbolt Holdings. On the same day, *Danley*'s Citibank Account was sold by Thunderbolt to *Midland* Funding by way of Assignment and Bill of Sale. These documents are attached to the Michael Burger Declaration, which was submitted to plaintiffs as part of defendants' supplemental response on March 14, 2016. Burger is the Senior Manager of Operations for *Midland* Credit Management, which is in turn the servicer and authorized agent for *Midland* Funding. *Midland* Funding purchased "all rights, title and interests in and to each and every one of the Purchased Accounts described in the related Purchased Accounts File . . . " (Burger Declaration ¶ 3, and Exhibit A thereto). Exhibit B to the Burger Declaration identifies *Danley*'s Citibank Account as one of the accounts sold to *Midland* Funding. The Account Purchase Agreement is attached as Exhibit C to the Burger Declaration.

2. Plaintiff McIntyre's Citibank Home Depot [*6] Credit Card Account

Jeffrey J. McIntyre, Jr. opened a Home Depot branded credit card account issued by Citibank on September 25, 2003, with an account number ending in 8762. The Citibank Home Depot Account was governed by a Credit Card Agreement. (Berger Dec. ¶ 12). Citibank's Supplemental Response includes a Declaration authenticating the Card Agreement that governs McIntyre's Citibank Home Depot Account. (Reinecke Declaration ¶¶ 5, 6). Attached as Exhibit 3 to the Reinecke Declaration is a copy of the January 2009 statement transaction detail that was sent to McIntyre. This statement contains the complete Card Agreement governing McIntyre's Home Depot Credit Card Account, including an arbitration agreement. Exhibit 4 includes the statement transaction detail for March and April 2009, which show that McIntyre continued to use the Account. McIntyre stopped making payments on the Citibank Home Depot Account by August 31, 2009. The Account was charged off on April 6, 2010.

The Citibank Home Depot Account Credit Card Agreement contains an arbitration provision that is the

same as that contained in the *Danley* Citibank Account quoted above. The Agreement also contains the same language in [*7] its class action waiver, *Federal Arbitration Act*, Assignment, and arbitration survival provisions.

A true and correct copy of the Bill of Sale and Assignment between Citibank and *Midland* Funding, dated March 23, 2011, is attached as Exhibit G to the Burger Declaration. The relevant portion of the Final Electronic File referenced in the Bill of Sale and Assignment identifying McIntyre's Citibank Home Depot Account is attached as Exhibit H to the Burger Declaration. The Purchase and Sale Agreement is Exhibit I, and shows *Midland* Funding purchased "all right, title and interest of Bank in and to the Accounts."

3. McIntyre's Chase Credit Card Account

Plaintiff McIntyre opened a credit card account issued by Chase Bank on September 20, 2007, with an account number ending in 3359. The Chase Account was governed by a Credit Card Agreement. (Berger ¶ 17). Between the time the Account was opened and August 31, 2010 when the Account was charged off by Chase, Chase issued five changes to the Cardmember Agreement. (Burger ¶ 18). None of the changes altered the Arbitration Agreement or the class action waiver provision.

The Credit Card Agreement provides, "Any use of your account is covered by this [*8] agreement. . . . Whether you use your account or not, you will be bound by this agreement unless you cancel your account within 30 days after receiving your card and you have not used your account for any purpose. (Exhibit O to Burger Declaration). McIntyre used his Chase Account and stopped making payments by January 13, 2010. The Account was charged off on August 31, 2010.

The Chase Credit Card Agreement contains an arbitration provision providing that either party may elect mandatory, binding arbitration, without the other's consent, of any claim, dispute or controversy arising from or relating to the Cardmember Agreement. The Chase Credit Card Agreement also contains a class action waiver, states it is governed by the *Federal Arbitration Act*, provides that Chase may assign the agreement, states that the arbitration provision survives, and has an anti-waiver clause.

A true and correct copy of the Bill of Sale and Assignment is attached as Exhibit K to the Burger Declaration. The Final Data File referenced in the Bill of Sale identifies McIntyre's Chase Account as one of the accounts sold to *Midland* Funding. (Exhibit L to Burger Declaration). The Account Purchase Agreement is attached [*9] as Exhibit M and shows that *Midland* Funding purchased "all right, title and interest in and to" McIntyre's Chase Account. (Burger Declaration ¶ 13, Exhibit M).

On August 24, 2015, plaintiffs filed their Second Amended class action complaint against the defendants alleging violations of the *Fair Debt Collection Practices Act*, *15, U.S.C. § 1692 et seq.* (*FDCPA*), and the Michigan Collection Practices Act, *MCL § 445.251, et seq.* (MCPA), in which plaintiffs allege the defendants sought to collect post charge-off interest that had been waived by their original creditors. The defendants notified plaintiffs of their election to arbitrate this matter but plaintiffs refuse to do so. On September 4, 2015 defendants filed their motion to compel arbitration and to dismiss the action without prejudice. On December 1, 2015 the court entered an order denying the motion without prejudice. The court permitted defendants to file a renewed motion to compel arbitration which is presently before the court.

ANALYSIS

The FAA represents a "liberal federal policy favoring arbitration" and the "fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 131 S. Ct. 1740, 1745, 179 L. Ed. 2d 742 (2011)*. When a contract contains an arbitration clause, there is a presumption in favor of arbitrability. *Huffman v. Hilltop Cos., LLC, 747 F.3d 391, 394 (6th Cir. 2014)* [*10] . When faced with a motion to compel arbitration, "the court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Javitch v. First Union Securities, Inc., 315 F.3d 619, 624 (6th Cir. 2003)*.

Plaintiffs assert that defendants violated federal and state law by allegedly seeking to collect post charge-off interest that had been waived by plaintiffs' original creditors. In order to resolve the issue of arbitrability of the plaintiffs' claims, the court must address plaintiffs' challenges to the validity of the agreement to arbitrate contained in the credit card agreements. The Supreme Court in *Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63, 130 S. Ct. 2772, 177 L. Ed. 2d 403 (2010)* held that this is the only "type of challenge relevant to a court's determination whether the arbitration agreement at

issue is enforceable." *Id. at 70*. A court is not to consider challenges that question "the contract as a whole, either on a ground that directly affects the entire agreement (*e.g.*, the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions render the whole contract invalid." *Id*.

I. Evidentiary Burden Regarding Original Contract Documents [*11]

Plaintiffs first question whether the exemplar credit card agreements provided by defendants are enforceable because defendants have not produced the original agreements signed by the plaintiffs. The last time the court considered the issue it was not convinced that the sample or embedded credit card agreements provided by defendants were the same agreements accepted by plaintiffs. Defendants have now produced declarations from the custodian of the accounts of the original creditor, in the case of Citibank, who in turn attached the relevant exemplar contract documents, as well as copies of actual statement transaction details from plaintiffs' credit card accounts. In the case of the Chase account, defendants provide the Affidavit of Sale of Account by Original Creditor, which attests to the validity of the records that make up the accounts, including an exemplar cardmember agreement and actual statement transaction details. (Burger Decl. Ex. O). Plaintiffs have not come forward with any evidence to rebut that the agreements that have been produced are the same as those entered between plaintiffs and the original creditors. See, e.g., *Coppock v. Citigroup, Inc., 2013 U.S. Dist. LEXIS 40632, *12-13 (W.D. Wash. March 22, 2013)* (accepting an "exemplar" agreement where the plaintiff [*12] "produced no evidence that the 2001 agreement (an exemplar of which Citi submitted with its motion) is not the agreement that governed her account.")

Defendants argue that the agreements submitted by defendants are not required to be authenticated, as argued by plaintiffs. A *Rule 56* standard of proof does not apply to defendants' motion to compel arbitration, and furthermore the current *Rule 56* does not require authentication. See, e.g., *Townsend v. Rhodes, 2015 U.S. Dist. LEXIS 129943, *10 n. 8 (E.D. Mich. Sep. 28, 2015)* ("In light of the 2010 changes to *Rule 56*, authentication is no longer required."). Even so, Ms. Reinecke has authenticated *Danley*'s and McIntyre's Citibank Card Agreements, and Mr. Burger has provided authentication of McIntyre's Chase Card Agreement, with their declarations for purposes of satisfying the business record exception to the rule against hearsay.

The arbitration clauses in the credit card agreements, which the court accepts at this stage as being those governing the parties' relationship, contain delegation clauses. The delegation clauses provide that claims relating to the debtors' account, a prior related account, or the parties' relationship are subject to arbitration, including claims regarding application, enforceability and interpretation of the agreement [*13] as a whole. Plaintiffs do not mention, let alone challenge the delegation provision. The Supreme Court held that such a failure requires the Court to "treat it [the delegation provision] as valid under *§ 2*, and must enforce it under *§§ 3* and *4*, leaving any challenge to the validity of the Agreement as a whole to the arbitrator." *Rent-A-Center, 561 U.S. at 72-73*.

II. Purchase of Credit Card Receivables

Plaintiffs next argue that defendants cannot invoke the arbitration agreements in the credit card agreements because "[t]he only thing these defendants ever bought were the rights to debts." The parties go on to argue the applicability of the UCC to the sale of credit card receivables and whether or not the terms of the credit card agreements follow the sale of the receivables. This is an example of an issue challenging the application, enforceability or interpretation of the credit card agreement and the arbitration provision, and as such it is distinctly an issue for the arbitrator to decide. A challenge to the applicability of the arbitration provision has been delegated to the arbitrator, as discussed in the previous section of this opinion.

III. Chase Purchase Agreement Section 4

Plaintiffs point to language in the Chase Purchase Agreement between Chase and *Midland* [*14] Funding, which states "Purchaser agrees that it will not attempt to enforce any rights it may otherwise have under any arbitration clauses that may appear in Seller's Cardholder Agreements." (Burger Declaration, Exhibit M, Section 4, p. 9). This language appears in the section regarding "Representations and Warranties of Purchaser". Defendants point out that plaintiffs omit the previous page of the agreement, which provides "All representations and warranties made in respect of this Section 4 shall survive the execution and delivery of this Agreement until the second anniversary of the applicable Closing Date for which such representations and warranties were made by Purchaser." (Exhibit M, Section 4(h), p. 8). The closing date for the sale of McIntyre's Chase Account to *Midland* Funding was March 28, 2012. (Exhibit K). Therefore, according to defendants, *Midland* Funding agreed not to enforce McIntyre's arbitration agreement for a two-year period

following the closing date, which ended on March 28, 2014.

The issue whether defendants acquired Chase and Citibank's rights to invoke the arbitration clause when they purchased the plaintiffs' debts is one that has been delegated to the arbitrator to decide.

CONCLUSION

For [*15] the reasons stated above, defendants' motion to compel arbitration and dismiss action without prejudice is GRANTED.

Dated: May 16, 2016

/s/ George Caram Steeh

GEORGE CARAM STEEH

UNITED STATES DISTRICT JUDGE

End of Document